## MERRELL vs. PEMBERTON.

Generally, a state court cannot restrain the infringement or the use of letters patent granted by the United States. Though as a means of enforcing covenant or express contract between the parties, the jurisdiction to restrain is not deficient, the facts in the present case do not entitle the plaintiff in error, unconditionally, to an injunction, nor the defendant in error, either to an injunction or a receiver. Only in a very extraordinary case, if at all, should the chancellor, before final decree, engage his court, through a receiver, in the manufacture and sale of patent or proprietary medicines, and require the parties to disclose to the receiver secret information necessary for beginning and carrying on the business.

The refusal to dispense with the condition on which injunction was

ordered in behalf of the plaintiff in error, is affirmed; the order appointing a receiver, defining his duties and powers, and declaring both parties enjoined, is reversed.

Jurisdiction. Patents. Injunction and receiver. Before Judge HILLYER. At Chambers. Fulton County. July 20th, 1878.

Merrell filed his bill against Pemberton, making, in brief, this case :

In the years 1870, 1871 and 1872, Pemberton obtained letters patent for the Globe Flower Cough Syrup, the Extract of Stillingia, and trade-marks covering these medical compounds. In November, 1875, he conveyed to Merrell & Cowden all right, title and interest in him vested by said letters patent, and agreed to deliver to them all stock, fixtures, material, etc., used in the manufacture and sale of said medicines. He also contracted not to manufacture either of said compounds thereafter, or any preparation similar to the same. In consideration of this transfer and contract, Merrell & Cowden paid to him $4,000.00 in cash, and gave to him their two notes, each for $1,000.00, payable respectively one and two years thereafter. In January, 1877, Cowden conveyed to complainant all his right, etc., in the patents, and the latter is now the sole owner thereof.

In violation of the rights of complainant, and in disregard of his solemn written contract, defendant declared in July, 1877, his intention to begin, in the following October, to manufacture and sell, on his own account and for his own benefit, the said compounds, and to use the trade-marks.

Prayer that defendant be required to discover to what extent he has infringed upon said patents, what preparation he has made for that purpose, to bring into court all apparatus and material used and intended to be used, etc., to be destroyed, and that he be enjoined from infringing, etc.

The answer admitted the sale and transfer of the patent-rights and trade-marks, but set up that prior to the time of such sale Merrell & Cowden, both non-residents of this

state, had agreed to give defendant $10,000.00 for the Globe Flower Cough Syrup alone, but after learning the secret of its manufacture they declined to comply with their contract; that, being pressed for money, he made the sale and conveyance above set forth, but they in this trade intended to defraud him as evidenced by the fact that they have failed to meet the first of the notes for the purchase money which matured November 10th, 1876; that he did notify complainant of his intention to commence the manufacture of said medicines, but this threat was more to induce complainant to pay the balance due him than to evince any purpose to manufacture, though he insists upon his right to manufacture a sufficient quantity to pay himself the amount due him.

Prayer for decree against complainant for $2,000.00 as balance due on executed contract, and for $4,000.00 on first contract; that complainant be enjoined from making and selling said medicines until said sums be paid; that a receiver be appointed to take said patents, manufacture said medicines, and hold the proceeds subject to the order of the court.

Complainant amended his bill and filed an answer to cross-bill, setting up misrepresentations by defendant as to value and sales of the medicines by which he was defrauded in both of the contracts alluded to, and alleging failure on the part of defendant to comply with his agreement to deliver up stock and material on hand at the time of the November, 1875, contract.

To this defendant again replied, denying fraud and asserting the utmost good faith.

After argument the following order was passed:

"*Ordered* by the court, that the injunction prayed for by complainant be granted upon complainant's giving bond and security to indemnify defendant in full of principal, interest, and costs of any decree that may be rendered for defendant against complainant on the final trial of said cause, on the notes named in the bill and answer and cross-bill. The sureties on said bond to justify and be approved by the clerk of this court.

"*Ordered further*, that complainant file said bond within thirty days from this date, or, in default thereof, that the prayer of the defendant in his cross-bill for a receiver and injunction, be granted; the said receiver to be named and his duties defined in a supplemental order to be made by the court."

The complainant subsequently applied to have this order modified so far as it required bond and security from him, and provided for the appointment of a receiver in case of his failure to file bond, presenting his affidavit setting up the following facts:

He would willingly comply with said order by giving the bond required but he is unable to do so. All of his property is invested in patent-rights for medical compounds. These rights have no market value, and consequently give to him no commercial standing or basis of credit. He is perfectly solvent, but for the reasons stated is unable to give the bond. If defendant recovers a judgment against him on the notes, he intends to pay it. Defendant has already sued him upon one of the notes in the court of common pleas No. 1, for the county of Philadelphia. Should a receiver be appointed, with power to manufacture and sell said medicines, his patent-rights covering the same will at once become utterly worthless; large sums which he has spent in advertising will also be lost to him.

Defendant replied that the suit in Philadelphia county had been dismissed, and that the affidavit of complainant demonstrated that the order of the chancellor should not be modified.

The court refused the application and ordered that George J. Howard be appointed receiver to take and hold the patent-rights and trade–marks named in the original bill; that he manufacture and vend the medicines and hold the pro- ceeds subject to further order; that he give bond in the sum of $3,000.00 conditioned for the faithful discharge of his duties, and for keeping the secrets of said patents; that complainant and defendant deliver the patent-rights, trade–

marks and property to the receiver, and disclose whatever information is necessary for him to manufacture and vend said medicines; that said receiver make and file an affidavit with the clerk of this court not to reveal the secrets and *formulas* for making said medicines; that complainant and defendant be enjoined from manufacturing and selling the compounds, and that the receiver make reports, etc.

To this order complainant excepted.

Z. D. HARRISON, for plaintiff in error, cited Code, §§274, 3098, 3149; 17 *Ga.*, 77; 2 Story's Eq. Jur., 959; Curtis on Patents, §§333, 328, 335; Code, §3181; 42 *Ga.*, 91.

JULIUS L. BROWN, for defendant, cited High. on Rec., §§4, 5; Code, §3149; 2 Dan. Ch. Pr., 1715, 1718, 1729; 14 How., 531.

BLECKLEY, Justice.

From numerous cases on the subject, it seems to be a general rule that the jurisdiction to restrain the infringement or the use of letters patent granted by the United States is exclusive in the federal courts, and does not appertain to the state courts. Where, however, injunction is needed as a means of enforcing covenant or express contract between the litigants, the jurisdiction appears to be in the state courts, even where the rights involved are patent-rights. 10 How., 101; 4 Blatch, 63; 6 *Ib.*, 356; 1 Cliff., 298. In the present case there is no controversy touching the validity or construction of the letters patent. Both parties are agreed as to these, the whole dispute being as to alleged contracts and alleged violations thereof. The jurisdiction, therefore, is not deficient, but we do not think the facts entitle the complainant to an injunction on better terms than those prescribed by the chancellor. The complainant is a non-resident of the state, and has not paid the agreed purchase-money, though the time fixed for payment has elapsed. It does not appear that he has property here out

of which any decree which the defendant, on his answer by way of cross-bill, may obtain against him at the end of this litigation, can be collected. If he cannot or will not give security for the payment of such decree, the defendant will be in no better situation after the decree than he is now with the original notes. Relatively to the jurisdiction of Georgia, the complainant is insolvent. He charges the defendant with the violation of contract or with a purpose to violate it; and the defendant retorts a previous violation, and a now continuing violation by the complainant. It is certain that the complainant has received the main items of his purchase, and has not paid his agreed debt. It may turn out that he is entitled to but a slight deduction, if any, and as he has no property within the reach of our process, he ought either to pay his creditor or secure him before subjecting him to the harsh discipline of an injunction. On this part of the case, the decision below is affirmed.

But we differ with the chancellor in reference to the disposition made of the other part of the case, on the prayer of the answer. A court cannot well take control of secrets, even to prevent their disclosure. To compel a revealment of them by the parties to a receiver as the officer of the court is undertaking too much. Indeed, there is in the nature of things an obstacle to the exercise of such a jurisdiction. If a thing is really a secret, how is the court to keep it so, and yet superintend its communication? How is the court itself to know when it has possession of the secret, and when it has but a simulation or false substitute? 2 Merivale, 446; 3 *Ib.*, 157. Unknown quantities are manageable in algebraic operations, but hardly so in forensic proceedings. No court can safely *administer* a secret. But a medical secret of all others is the least amenable to juridical administration. To make drugs by concealed methods or from undeclared materials, for dissemination among the people, is a business of great responsibility, affecting more or less the public health; and for a court to engage in it, by a receiver or otherwise, has the appearance of being rash.

Perhaps, as a means of satisfying a final decree in a cause, a court of chancery might do it after taking competent medical advice ; but before decree, or without such advice, the circumstances would have to be very extraordinary to justify it.  What we have said would apply even to adopting and carrying on a business in some existing establishment already founded, and under seizure by means of a receiver or some other officer of court.  But in the present case there is no such establishment, so far as appears, within the jurisdiction of the court.  The defendant has none ; and if the complainant has any, it is beyond the limits of the state.  What the order passed by the chancellor seems to contemplate, is the setting up of a business, the opening of a house or place for the manufacture and sale of the patent or proprietary articles.  To do this, even were there no secret information required as a part of the capital, would, we think, be wholly inadmissible.  Where it is for the interest of the litigating parties to continue the operations of an existing establishment until a dispute concerning it can be settled, or until incomplete operations are finished, a receiver for that purpose may be appointed ; but a receiver to begin a business at a place where no steps have been taken by the parties, or either of them, to found it, is not to be appointed.  There should have been none appointed in the present case, and the complainant should not have been enjoined from manufacturing and selling the articles pending this litigation.  Of course, it was not the purpose of the chancellor to enjoin the defendant from doing so, as a separate measure, except on the condition prescribed in the other branch of this case.  The unconditional injunction was, as to both parties, a mere adjunct to the scheme of a receiver ; and the reversal which we pronounce as to the receiver, carries away the injunction also.

Judgment accordingly.